UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:13-cv-10063-JLK

GEORGE P. IRISH, et al.,

    Plaintiffs,

v.

R. REGINALD HYDE, II, et al.,

    Defendants.

_____/

**PLAINTIFFS' MOTION TO STRIKE
CERTAIN AFFIRMATIVE DEFENSES
TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

    Plaintiffs George P. Irish and Sandra K. Irish hereby move under Fed.R.Civ.P. 12(f) for an order striking certain affirmative defenses asserted in the Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint DE 120 (filed Dec. 14, 2016). The Second Amended Complaint will be referred to as "SAC" and the Answer and Affirmative Defenses as "ASAC."[1]

    For the reasons set forth in the following Memorandum of Law, which is incorporated herein, the Court should strike the following affirmative defenses as being legally insufficient: Nos. Nos. 3, 4, 6, 7, 8, 11, 12, and 13. It should be noted that the Plaintiffs are limiting this Motion to defenses that are, on their face, legally insufficient, under the standards governing motions under Fed.R.Civ.P. 12(b)(6). Plaintiffs' not moving against any defense not

---

[1] The ASAC was filed by the four defendants —Messrs. Hyde, Cannova, Costello and Sauta—other than John Reynolds, who is *pro se*. The word "Defendants" is used to refer to the four answering defendants, excluding Mr. Reynolds.

covered by this Motion should not be deemed a waiver of objections to the legal or factual sufficiency of that defense.

## MEMORANDUM OF LAW

### A. Scope and Purpose of Rule 12(f)

Fed.R.Civ.P. 12(f) states: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[2]

As this Court explained in *Katz v. Chevaldina*, No. 12-22211-CIV, 2013 WL 2147156 (S.D. Fla. May 15, 2013), "[a]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matter." *Id.*, at *1 (citations omitted). "Affirmative defenses are insufficient as a matter of law if they do not meet the general pleading requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which requires 'a short and plain statement' of the defense." *Id.* (citations omitted). "An affirmative defense may also be stricken as insufficient if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law. *Id.* (citations and internal quotation marks omitted). While Rule 12(f) motions are generally not favored, *id.*, at 2, they "are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts." 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.) (citing cases).

The standard governing a motion to strike an affirmative defense for being legally insufficient is the same as that under Rule 12(b)(6). "Technically, affirmative defenses are subject to being stricken under Rule 12(f), not dismissed under Rule 12(b)(6). The same standard applies to both kinds of motions, however." *Cobra Capital LLC v. Stover Indus., Inc.*, No. 06

---

[2] This motion is being filed within 21 days of service of the pleading in accordance with Fed.R.Civ.P. 12(f)(2).

C 2822, 2007 WL 844635, at *1 n.1 (N.D. Ill. Mar. 14, 2007), cited in 5C Fed. Prac. & Proc. Civ. § 1381 (3d ed.). The court tak[es] all well-pleaded facts as true and constru[es] them in the light most favorable to the nonmoving party." *Meyer v. Greene*, 710 F.3d 1189, 1194 (11th Cir. 2013).

### B. Insufficient Affirmative Defenses

The Defendants' affirmative defenses must be read in light of the fact that the Complaint alleges, and the Defendants admit in the ASAC, that the Defendants executed a promissory note (the "Note") in the amount of $428,571.43 dated March 16, 2006. SAC, ¶ 13; ASAC, ¶ 13. [3]

#### 1. Affirmative Defenses No. 3 and 4

*3. Plaintiffs failed to state a claim to enforce the Promissory Note because the Plaintiffs did not pay the signatories to the Promissory Note (i.e., the Defendants and Daniel J. Duffy) any money before or at the time of its execution. Since nothing was paid by the Plaintiffs in the first place, there was nothing for the signatories to the Promissory Note to repay. The so-called Promissory Note is therefore void and/or unenforceable.*

*4. Plaintiffs are not entitled to any relief sought in the Complaint as a matter of law because the Plaintiffs did not pay the signatories to the Promissory Note (i.e., the Defendants and Daniel J. Duffy) any money before or at the time of its execution. Since nothing was paid by the Plaintiffs in the first place, there was nothing for the signatories to the Promissory Note to repay. Accordingly, Plaintiffs did not sustain any monetary or financial damages as a result of the Defendants and Daniel J. Duffy's ("Mr. Duffy") alleged failure to repay the figure listed as the principle* [sic] *of the Promissory Note.*

Affirmative Defenses Nos. 3 and 4 both seek dismissal on the ground that the Plaintiffs did not pay any money to the obligors before or at the time of the execution of the Note. Affirmative Defense No. 3 is styled as a "failure

---

[3] Defendants do "den[y] that the document, though labelled "Promissory Note" and containing an unconditional promise to pay an exact amount by an exact date, "is a promissory note." ASAC, ¶ 13.

to state a claim" on account of there being "nothing … to repay." Affirmative Defense No. 4 claims that the Plaintiffs are not entitled to any relief because, there having been no payment by the Plaintiffs, the Plaintiffs suffered no damages. Because these defenses discuss interrelated issues, we discuss both of them together, distinguishing them as necessary.

Affirmative Defense No. 3 carries no label and does not categorize itself through reference to any common, recognized legal principle, such as, for example, "lack of consideration." We construe this affirmative defense as seeking dismissal on the ground that an affirmative defense—lack of consideration—is present on the face of the Complaint.[4]

That the Note was executed in favor of the Plaintiffs without their paying money to the obligors does not mean that, as a matter of law, the Note is "void" or "unenforceable."

It is not "void" because the Defendants have not alleged that enforcing it would violate some public policy or law of the State. *See Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 431 (1998) (Breyer, J., concurring) ("To determine whether a contract is voidable or void, courts typically ask whether the contract has been made under conditions that would justify giving one of the parties a choice as to validity, making it voidable, *e.g.,* a contract with an infant; or whether enforcement of the contract would violate the law or public policy irrespective of the conditions in which the contract was formed, making it void."). *See also Lindo v. NCL (Bahamas), Ltd.,* 652

---

[4] Under Florida law, lack of consideration for a note is an affirmative defense, Powell v. Walbek, 209 So. 2d 488, 489 (Fla. Dist. Ct. App. 1968), on which the defendant bears the burden of proof. McDonough v. Greer, No. CV 14-61526-CIV, 2015 WL 12532634, at *4 (S.D. Fla. Sept. 18, 2015). However, a complaint can be dismissed if it clearly establishes an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007).

F.3d 1257, 1288 (11th Cir. 2011) ("It is well-established that agreements contrary to public policy are characterized in our legal system as 'void'.") There is and could be no allegation that the Note violates any public policy.

Likewise, the Note is not "unenforceable," even if no money changed hands at or before it was executed. The promissor's receipt of money is but one way for there to be a valid promise to pay the promisee money. What binds a promissor to his or her promise is called "consideration." "Consideration is, in effect, the price bargained and paid for a promise—that is, something given in exchange for the promise." 17A Am. Jur. 2d Contracts § 101. It is beyond cavil that the "price" need not be "paid" through an exchange of money:

> The consideration required to support a simple contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee. Williston on Contracts, Vol. 1, Sec. 102 (1921 Ed.); Elliott on Contracts, Vol. 1, Sec. 203 (1913 Ed.); *Tampa Northern R. Co. v. City of Tampa*, 104 Fla. 481, 140 So. 311, *rehearing denied* 104 Fla. 486, 141 So. 298.
>
> 'It is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement to the transaction. Indeed, there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.' 13 C.J., Contracts, Sec. 150, pp. 315, 316. See, also, *Henderson v. Kendrick*, 82 Fla. 110, 89 So. 635, *Bigelow v. Bigelow*, 95 Me. 17, 49 A. 39.

*Dorman v. Publix-Saenger-Sparks* Theater, 184 So. 886, 889 (Fla. 1938). *Accord Crystal Colony Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 6 F. Supp. 3d 1295, 1299 (S.D. Fla. 2014) (consideration for a promise may consist of the promisee's forbearing from suing the promissor).

Finally, the Note, on its face, establishes an obligation to pay the amount due and it states that the obligors owe the money "for value received." Such words establish a rebuttable presumption under Florida law that the Note was issued for consideration. 11 Fla. Jur 2d Contracts § 75. *See Sullivan v. Lear*, 23 Fla. 463, 477, 2 So. 846, 851 (1887) (where deed acknowledges conveyance made "for value received," acknowledgment is evidence of receipt of consideration, subject to being disproved). *See also Lakes of Meadow Vill. Homes Condo. v. Arvida/JMB Partners, L.P.*, 714 So. 2d 1120, 1123 (Fla. 3d DCA 1998) (use of words "consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, the sufficiency of which ... is hereby acknowledged" creates rebuttable presumption of consideration). Therefore, the Complaint is not dismissible because of the failure to allege that the Plaintiffs paid something to the Defendants at or before the latter executed the Note in favor of the former.

### 2. Affirmative Defenses 6, 7 and 8

*6. On November 21, 2005, New Stream Real Estate, L.L.C. f/k/a Charter Oak Real Estate Fund, LLC ("Charter Oak") gave a $3,100,000.00 loan (the "Charter Oak Loan") to Keys Ventures Associates, LLC ("KVA")—of which Mr. Irish was the managing member—that Mr. Irish personally guaranteed to fund KVA's investment in the Tampa Bay Project. See Exhibits "A" and "B" Per Mr. Irish deposition testimony on August 2 and 31, 2016 in this lawsuit, the Defendants, Mr. Duffy, and Mr. Irish each had a 1/7th interest in KVA and the purpose of the Promissory Note was to protect Mr. Irish's credit score and his interest in KVA "if the loan went upside down" and resulted in a judgment being entered against Mr. Irish personally for 1/7th of the Charter Oak Loan. Plaintiffs are not entitled to any relief sought in the Complaint because the inaccurately titled "Promissory Note" was, in actuality, merely a conditional indemnification to protect Mr. Irish in the event that any of the other six members of KVA (i.e., the five Defendants and Mr. Duffy) and signatories to the Charter Oak Loan defaulted and Charter Oak obtained a judgment against Mr. Irish for 1/7th of the Charter Oak Loan. This, according to Mr. Irish, explains why the stated "principal"*

*of the so-called Promissory Note is exactly 1/7th of $3,000,000.00 (i.e., $428,571.46) (the remaining $100,000.00 of the Charter Oak Loan was comprised of loan origination fees, broker fees, and commissions). Neither KVA nor the Plaintiffs ever paid the stated "principle" of $428,571.46 to any of the Defendants or Mr. Duffy. There is no longer any risk that Charter Oak will sue Mr. Irish for non-payment of the Charter Oak Loan because:*

*(a) The CEO of Charter Oak (i.e., Donald Porter) executed a Release Agreement in Mr. Irish's favor. See Exhibit "C."*

*(b) The Defendants and Mr. Duffy executed an Indemnification/Hold Harmless Agreement in Mr. Irish's favor. See Exhibit "D."*

*(c) Defendants and Mr. Duffy executed an Agreement and General Release in Mr. Irish's favor. See composite Exhibit "E."*

*(d) Charter Oak has discharged the mortgages secured by the various Defendants' homes and businesses that Defendants executed to secure the Charter Oak Loan. See, e.g., composite Exhibit "F."*

*(e) Charter Oak voluntarily dissolved in November 2014 as evidenced by the Certificate of Cancellation for Charter Oak issued by The Secretary of State of the State of Delaware on that date. See Exhibit "G."*

*(f) The statute of limitations for Charter Oak to sue Mr. Irish on the 10+ year old Charter Oak Loan has long since run.*
*In light of the foregoing, there is no longer any need for the indemnity provided by the inaccurately titled Promissory Note, rendering it moot, unenforceable, and of no further effect.*

*7. The purpose of the note was to protect Mr. Irish's credit, his interest in KVA, and him from personal liability in the event the signatories to the Charter Oak Loan defaulted and Charter Oak obtained a judgment against Mr. Irish for 1/7th of the Charter Oak Loan the Charter Oak Loan. Defendants cannot be not liable under the Promissory Note because Mr. Irish released the Defendants from any liability to Mr. Irish for anything, including the Charter Oak loan and the alleged forgery to the Guaranty. See Exhibit "H."*

> *8. The note is not enforceable because there was no consideration to support it. By the time it was executed, (i) the Defendants had already executed the indemnity in Mr. Irish's favor; (ii) Mr. Porter had already released Mr. Irish from any liability under the Guaranty; and (iii) Mr. Irish had already executed a general release in favor of the Defendants. The whole purpose for the Promissory Note's existence—according to Mr. Irish's own testimony—no longer existed at the time it was executed. See Exhibit "C," "D," and "H."*

In these defenses, the Defendants seek to contradict the plain meaning of an unambiguous contract—the obligors unconditionally promise, for value received, to pay $428,571.43 to the obligees by November 30, 2007—by offering evidence concerning the "purpose" of the transaction as purportedly espoused by Mr. Irish in his deposition testimony.[5] They seek to do so by resorting to parol evidence, but they miss an important step: they fail to allege, and, in any event, cannot show, that the Note is in any way ambiguous. Thus, whatever Mr. Irish's subjective intent, it is not admissible unless the Court deems the Note ambiguous, which, on the face of this Note, would not be a fair reading.

Evidence concerning a party's subjective recollection of the purpose of an unambiguous contract is parol evidence that may not be considered in determining the intent of the parties. The Florida Supreme Court, in *Knabb v. Reconstruction Fin. Corp.*, 197 So. 707, 715 (Fla. 1940), stated the rule: "In

---

[5] On this Motion, we assume that the Defendants have fairly and accurately quoted Mr. Irish's deposition testimony, to which they refer. Nevertheless, it bears mention that, if and when the Court need address these defenses on their merits, it will necessarily see that the alleged statements of Mr. Irish concerning the "purpose" of the Note was, in fact, testimony concerning the adequacy of the consideration for the Note, a different issue, and that, as well, the Defendants take substantial liberties with that testimony in referring to it in the ASAC.

arriving at the intention of the parties, *where the language of a contract is susceptible of more than one construction, … the court will consider* the nature of the agreement itself, together with all the facts and circumstances leading up to and attending its execution, the relation and condition of the parties, the nature and situation of the subject matter, and *the apparent purpose of making the contract*." But there is an important caveat: "This rule does not apply, however, where the language of the contract leaves no doubt as to the meaning of the parties and in such a case the contract is to be construed without regard to extraneous facts." (quoting 17 C.F.R. Contracts § 321; emphasis added).

*Knabb* remains good law today. *E.g.*, *Prime Homes, Inc. v. Pine Lake, LLC*, 84 So. 3d 1147, 1152 (Fla. Dist. Ct. App. 2012) ("Parol evidence is inadmissible to contradict, vary, or modify terms which are unambiguously contained within a written agreement.") This includes the statement in *Knabb*, 197 So., at 715, that the parol evidence rule is not a rule of evidence but rather a rule of substantive law. *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1309 n.47 (11th Cir. 1998).

It is for the Court to determine whether the Note is ambiguous, and only then would it be proper to consider parol evidence. *E.g., Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. Dist. Ct. App. 2009). In other words, Mr. Irish's alleged explanation of the "purpose" of the Note is not to be considered in determining the enforceability of the Note if its language is unambiguous. Crucially, the Defendants do not allege that the Note is unambiguous, nor could they, in good faith, make such an allegation. A plain inspection of the Note proves this beyond doubt.[6] There is nothing ambiguous about the standard-language content of this Note.

---

[6] For ease of reference for the Court, we attach the Note to this Motion. It is also Exhibit "A" to the SAC.

### 3. <u>Affirmative Defense No. 11</u>

*11. Mr. Irish fraudulently induced the Defendants to execute the so-called Promissory Note by failing to disclose to them prior to their execution of the Promissory Note that his real estate license had previously been suspended.*

This defense—the non-disclosure of the previous suspension of his "real estate license"—is insufficient as a matter of law on a number of grounds.

First, the defense fails to allege that Mr. Irish owed a "fiduciary or fiduciary-like duty"[7] to the Defendants, giving rise to an obligation to disclose the previous suspension of his real estate license. This is a requisite element of a claim of fraud based on the non-disclosure of a fact. As Judge Seitz has explained:

> Under Florida law, omissions are not actionable as fraudulent misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information. *TransPetrol Ltd. v. Radulovic* 764 So.2d 878, 880 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose."). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* at 880 (citing *State v. Mark Marks, P.A.,* 654 So.2d 1184, 1189 (Fla. 4th DCA 1995)); *see also Friedman v. Am. Guardian Warranty Servs.,* 837 So.2d 1165, 1167 (Fla. 4th DCA 2003) ("The amended complaint does not allege a relationship of trust between Friedman and Guardian, therefore it does not properly allege fraud by concealment ... The court below was correct in granting the motion to dismiss"). In an arms-length transaction, neither party owes a duty to the other to act for

---

[7] Hawaiian Airlines, Inc. v. AAR Aircraft Servs., Inc., 167 F. Supp. 3d 1311, 1322 (S.D. Fla. 2016), *appeal dismissed* (Aug. 4, 2016) (negligent misrepresentation claim for omission of fact requires existence of "fiduciary or fiduciary-like duty" to speak.

> that party's benefit or protection, or to disclose facts that the other party could have discovered through its own diligence. *Taylor Woodrow Homes,* 850 So.2d at 540–41 (citing *Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D.Fla.1991)).

*Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005), *aff'd sub nom. Behrman v. Allstate Life Ins. Co.*, 178 F. App'x 862 (11th Cir. 2006).

Second, even apart from failing the requirement that the defense allege a duty, it fails to allege at least two requisite elements of fraudulent inducement: that the fact that Mr. Irish's real estate license had "previously" been suspended was a material fact, and that Mr. Irish, in not disclosing the suspension, specifically intended to induce the Defendants to execute the Note. *Sena v. Pereira*, 179 So. 3d 433, 435–36 (Fla. Dist. Ct. App. 2015) (stating elements of a claim for fraudulent inducement, including materiality and intentional inducement). Materiality under Florida law means that, absent the misrepresentation or omission, the transaction would not have occurred. "'[A] fact is material when if the representation had not been made, the contract or transaction would not have been entered into. Conversely, a representation is not material when it appears that the contract or transaction would have been entered into notwithstanding it.' *Morris v. Ingraffia*, 18 So. 2d 1, 3 (Fla. 1944)." *Caldwell v. Compass Entm't Grp. LLC*, No. 6:14-CV-1701-ORL-41TBS, 2015 WL 8772909, at *6 (M.D. Fla. Dec. 15, 2015). There are no such allegations.

Third, the defense fails to comport with the requirements of Fed.R.Civ.P. 9(b), in that it contains purely conclusory allegations of fraud and fails to disclose the proceeding in which Mr. Irish's license was suspended, and thus runs afoul of one of the purposes of Rule 9(b), to "protect[ ] defendants against spurious charges of immoral and fraudulent

behavior." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988).

### 4. **Affirmative Defense No. 12**

*12. The Plaintiffs are not entitled to recover anything in this lawsuit because they committed fraud by failing to inform this Court or the Defendants that on August 21, 2015, in the case styled In re: Estate of George Phillip Irish, an alleged Incapacitated Person, Case No. 59 of 2015, in the Orphan's Court division of The Court of Commons Pleas for Wayne County, Pennsylvania (the "Pennsylvania Court") an order was entered finding Mr. Irish "is so severely mentally impaired," "adjudge[ing him] totally incapacitated," and appointing Jeffrey Treat, Esq. ("Mr. Treat") as Mr. Irish's plenary guardian. See Exhibit "I."*

The Defendants ask for the extreme remedy of dismissal because the Plaintiffs did not bring to the Court's attention the appointment of Jeffrey Treat as Mr. Irish's plenary guardian. For two separate reasons, the Court should strike this defense.

First, the Court has already decided not to enter this precise relief. Order Granting Motion to Dismiss, Granting Leave to Amend Answer and Affirmative Defenses, and Vacating Scheduling Order, DE 118 (Nov. 21, 2016) ("the Court would be justified in dismissing Plaintiff's Complaint with prejudice for failing to add Plaintiff s plenary guardian as a party to this action. However, the Court finds dismissal with prejudice would be an overly severe sanction.").[8] No motion for reconsideration was made and there is no reason to revisit this decision by allowing it to be raised at trial or on summary judgment. Courts have long used Rule 12(f) to strike defenses that

---

[8] The Defendants had previously moved to dismiss on the same ground that is advanced in this affirmative defense. DE 76 (filed Sept. 6, 2016). The Court denied for failure to cite any authority. DE 101 (Oct. 24, 2016). This was, in effect, a decision on the merits of the motion, since, in the Court's denial of the Defendants' motion for reconsideration, DE 105 (Oct. 26, 2016), it specifically stated, *id.,* at 2 n.1, that the Defendants had failed to cite in DE 76 to any authority for its argument that Mr. Irish lacked capacity to sue.

have already been decided against the party asserting the defense. *E.g.*, *Trustees of Local 464A United Food & Commercial Workers Union Pension Fund v. Wachovia Bank, N.A.*, No. CIV-09-668 (WJM), 2009 WL 4138516, at *2 (D.N.J. Nov. 24, 2009) ("Defendants are not permitted to reassert [an] argument … [that] the Court has already deemed insufficient, in the guise of an affirmative defense"); *Modern Creative Servs., Inc. v. Dell Inc.*, No. CIV-A-05-3891(JLL), 2008 WL 305747, at *2 (D.N.J. Jan. 28, 2008) (same); *AMEC Civil, LLC v. DMJM Harris, Inc.*, No. CIV-A-06-64 (FLW), 2007 WL 433328, at *5 (D.N.J. Feb. 6, 2007) (same); *Lopez v. Resort Airlines*, 18 F.R.D. 37, 40 (S.D.N.Y. 1955) (same). It should follow that procedure here.

Second, if the Court nevertheless determines to consider the merits of the motion, the same judgment that the Court has previously made—that dismissal is too severe a sanction—should be made on this Motion.

"Fraud on the court" is a doctrine that permits a court to overturn a judgment if it is the product of "a deliberately planned and carefully executed scheme to defraud" the court. *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 245 (1944). It has no applicability in procedural contexts such as this.

In the Eleventh Circuit, "'[f]raud on the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct." *Travelers Indem. Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir. 1985) (quoting 7 *Moore's Federal Practice* ¶ 60.33). Notably, the Eleventh Circuit does not the fraud on the court doctrine to "[f]raud *inter parties,* without more." *Travelers Indem.*, 761 F.2d at 1551 (emphasis in original). Thus, in *S.E.C. v. ESM Group, Inc.*, 835 F.2d 270 (11th Cir. 1988), the court, relying on *Travelers*, held that an accounting firm sued

for negligence by a company relying on the firm's audit of another entity in which that company invested could not overturn that judgment as a fraud on the court when it turned out that the investor itself was perpetrating a massive fraud on its customers. The *ESM* court held that "[t]he fraud alleged in the present case primarily concerns the two parties involved and does not threaten the public injury which is the concern of fraud on the court." *Id.*, at 273.

Accordingly, it is significant that when the Defendants raised this issue in their motion to dismiss, DE 76, they articulated no harm that would support labeling the failure to disclose the appointment of the guardian as a "fraud on the court." Only the Defendants' private interests were mentioned: the possibility of collateral attack on any judgment against the Plaintiffs or settlement with the Defendants and speculation that the guardian would, if properly informed, discontinue the suit or settle it on terms more favorable to the Plaintiffs.[9] DE 76, at 7-8. These are the hallmarks of a claim that is *not* a "fraud on the court," and so even if it were theoretically possible to apply this doctrine, which has arisen only in the context of vacating judgments obtained as a result of fraud on the court, to this context, it would not be applicable because of its resting on primarily, if not exclusively, private concerns.

> *13. The Plaintiffs are not entitled to recover anything in this lawsuit because they have unclean hands for failing to disclose the Pennsylvania Court's August 21, 2015 order appointing Mr. Treat as Mr. Irish's plenary guardian to this Court and the Defendants. See id.*

Invocation of the "unclean hands" doctrine with respect to the non-disclosure of the Irish guardianship is to no avail and the defense is insufficient as a matter of law. This is because the doctrine has no

---

[9] Mr. Treat, in his Declaration attached to the Plaintiffs' opposition to DE 76, specifically denied the speculations contained in the motion. DE 77-1 (filed Sept. 13, 2016).

applicability in a case at law. As Judge Hurley explained in *Regions Bank v. Old Jupiter, LLC*, No. 10-80188-CIV, 2010 WL 5148467, at *5–6 (S.D. Fla. Dec. 13, 2010), *aff'd*, 449 F. App'x 818 (11th Cir. 2011):

> The equitable doctrine of "unclean hands" applies when a party seeking equitable relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation… The unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses. Where, as here, a plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable. (citations omitted).

*Accord, Nature's Prod., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1317 (S.D. Fla. 2013) (unclean hands doctrine unavailable in action for damages); *SMK Assocs., LLC v. Lorali, Inc.*, No. 14-CV-61460, 2015 WL 11197776, at *3 (S.D. Fla. Jan. 21, 2015) (unclean hands "not a recognized defense to a claim for damages for breach of contract").

## CONCLUSION

For the reasons stated in this Motion and Memorandum, the Court should strike Affirmative Defenses Nos. 3, 4, 6, 7, 8, 11, 12, and 13.

>
> Respectfully submitted,
> THE BRODSKY LAW FIRM, PL
> 4000 Ponce de Leon Boulevard
> Suite 470
> Coral Gables, Florida 33146
> Tel.:   305-777-0280
> Fax:   305-777-0449
>
>         */s/ Richard E. Brodsky*
> By:_____
> Richard E. Brodsky
> Florida Bar Number 322520
> rbrodsky@thebrodskylawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent a copy by email to John Reynolds, 221 Howell, Spring Lake, New Jersey 07762, j.reynolds@sentryhospitality.com.

/s/ *Richard E. Brodsky*

_____

Richard E. Brodsky